## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| COMMWORKS SOLUTIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS INSTRUMENTS INCORPORATED,<br><br>Defendant. | Civil Action No. 2:25-cv-00439<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff CommWorks Solutions, LLC ("CommWorks" or "Plaintiff") files this complaint against Defendant Texas Instruments Incorporated ("TI" or "Defendant"), alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.    This is a patent infringement action for Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents"), issued by the United States Patent and Trademark Office ("USPTO"):

| | Patent No. | Reference |
|---|---|---|
| | 7,177,285 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7177285,<br><br>https://patentcenter.uspto.gov/applications/10961959 |
| 2. | 7,463,596 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7463596,<br><br>https://patentcenter.uspto.gov/applications/11673513 |
| 3. | 7,911,979 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7911979,<br><br>https://patentcenter.uspto.gov/applications/12323399 |

|   | Patent No. | Reference |
|---|---|---|
| 4. | RE44,904 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE44904, <br> https://patentcenter.uspto.gov/applications/13171882 |
| 5. | 7,027,465 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7027465, <br> https://patentcenter.uspto.gov/applications/10167986 |
| 6. | 6,891,807 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6891807, <br> https://patentcenter.uspto.gov/applications/10341847 |
| 7. | 9,554,304 | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9554304, <br> https://patentcenter.uspto.gov/applications/14090760 |

2.     Plaintiff seeks monetary damages.

## PARTIES

3.     CommWorks is a limited liability company formed under the laws of the State of Georgia with its registered office address located in Alpharetta, Georgia (Fulton County).

4.     On information and belief based upon public information, Defendant Texas Instruments Incorporated is a corporation organized and existing under the laws of Delaware

5.     On information and belief based upon public information, TI maintains an established place of business at 12500 TI Boulevard MS A3000, Dallas, Texas 75243.

6.     On information and belief based upon public information, Defendant has directly and/or indirectly developed, designed, manufactured, distributed, marketed, offered to sell and/or sold infringing products and services in the United States, including in the Eastern District of Texas, and otherwise direct infringing activities to this District in connection with their products and services as set forth in this Complaint.

## JURISDICTION AND VENUE

7.      CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

8.      This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

9.      Defendant is subject to this Court's specific and general personal jurisdiction under due process due at least to Defendant's substantial business in this judicial district, in the State of Texas and in the United States, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

10.      Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District, in this State of Texas, and in the United States, directly, through intermediaries, by contributing to and through its inducement of third parties, and offering its products or services, including those accused of infringement here, to customers and potential customers located in this District.

11.      Defendant has purposefully directed infringing activities at residents of the State of Texas, and this litigation results from those infringing activities.  Defendant regularly sells (either directly or indirectly), its products within this District.  For example, upon information and belief, Defendant has placed its products into the stream of commerce *via* an established distribution channel, with the knowledge or understanding that such products are being sold in this Judicial District and the State of Texas.  Defendant is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due to its substantial and

pervasive business in this State and District, including its infringing activities alleged herein, from which Defendant derives substantial revenue from goods sold to residents and consumers.

12.    Defendant sells, offers for sale, uses, makes and/or imports products that are and have been used, offered for sale, sold, and purchased in the Eastern District of Texas, and Defendant has committed acts of infringement in the Eastern District of Texas, has conducted business in the Eastern District of Texas, and/or has engaged in continuous and systematic activities in the Eastern District of Texas.

13.    Under 28 U.S.C. §§ 1391(b)-(d) and 1400(b), venue is proper in this judicial district as to Defendant at least because Defendant has maintained established and regular places of business in this Distract, has transacted business in this District, and has committed acts of infringement from this District, including, but not limited to, the sale and use of the products identified below.

14.    On information and belief, Defendant has physical facilities and employees in Texas, including a manufacturing facility in Richardson, Texas.  *See Richardson, Texas: 300 mm wafer fabs*, TEXAS INSTRUMENTS (last visited Apr. 23, 2025), *available at* https://www.ti.com/about-ti/company/ti-at-a-glance/manufacturing/richardson.html (stating that TI "began operating in Ricardson in 2009" and that TI has built two 300-mm analog wafer fabs in Richardson).

15.    Defendant has not contested the propriety of venue in this District for patent infringement actions and has also admitted that it has facilities and employees located in this District. *See Led Apogee, LLC v. Texas Instruments Incorporated*, 2:24-cv-0996-JRG, Dkt. No. 8, at ¶ 7 (E.D. Tex. Feb. 13, 2025); *Redwood Technologies, LLC v. Texas Instruments Incorporated*, 2:23-cv-00135-JRG, Dkt. No. 12, at ¶ 14 (E.D. Tex. June 5, 2023); *Luminatronics LLC v. Texas Instruments Incorporated*, 2:23-cv-00085-JRG, Dkt. No. 8, at ¶ 7 (E.D. Tex. May 9, 2023).

## THE ACCUSED PRODUCTS

16.    CommWorks repeats and re-alleges the allegations in the paragraphs above as though fully set forth in their entirety.

17.    Defendant uses, causes to be used, manufactures, provides, supplies, or distributes one or more TI Systems-on-Chips (SoCs), and/or devices, including, but not limited to the "Accused Products," set forth below:

- TI SoCs, and/or devices supporting **Wi-Fi Multimedia and 802.11-2007+** functionality (the "TI Wi-Fi Multimedia Products"), which include but are not limited to:

  o  CC3100,

  o  CC3200,

  o  CC3100MOD,

  o  CC3200MOD,

  o  CC3120,

  o  CC3120MOD,

  o  CC3220,

  o  CC3220SMOD,

  o  CC3220SFMOD,

  o  CC3220SMODA,

  o  CC3220SFMODA,

  o  CC3135,

  o  CC3135MOD,

  o  CC3235x,

  o  CC3235SMOD,

  o  CC3235SFMOD,

- o CC3235SMODA,
- o CC3235SFMODA,
- o WL1801,
- o WL1831,
- o WL1801MOD,
- o WL1805MOD,
- o WL1807MOD,
- o WL1831MOD,
- o WL1835MOD,
- o WL1837MOD,
- o CC3230,
- o CC3130,
- o CC3301MOD,
- o CC3350,
- o CC3300,
- o CC3301,
- o CC3230S,
- o CC3230SF,
- o CC3235MODAS,
- o CC3235MODASF,
- o CC3235MODS,
- o CC3235MODSF,
- o CC3235S,

- o CC3235SF,

- o CC3220MODA,

- o CC3220MOD,

- o CC3220R,

- o CC3220S,

- o CC3220SF,

- o WDBM-LU00A-R, and

- o WMM compatible Devices/Chips.

- TI devices/chips supporting **Wi-Fi Protected Setup (WPS)** functionality (the "TI WPS Products") which include but are not limited to:

- o C3200MOD,

- o CC3120MOD,

- o CC3220MODS,

- o CC3220MODSF,

- o CC3220MODAS,

- o CC3220MODASF,

- o CC3100,

- o CC3200,

- o CC3120,

- o CC3130,

- o CC3135,

- o CC3220,

- o CC3230,

- o CC3235,

- o CC3230S,

- o CC3230SF,

- o CC3235S,

- o CC3235SF,

- o CC3300,

- o CC3301,

- o CC3235MODS,

- o CC3235MODSF,

- o CC3235MODAS,

- o CC3235MODASF,

- o CC3235SMOD,

- o CC3235SFMOD,

- o CC3235SMODA,

- o CC3235SFMODA,

- o CC3135MOD,

- o CC3220MOD,

- o CC3220MODA,

- o CC3220SMOD,

- o CC3220SFMOD,

- o CC3220SMODA,

- o CC3220SFMODA,

- o CC3220R,

- o CC3220S,

- o CC3220SF,

- o CC3100MOD,

- o WL1801,

- o WL1831,

- o WL1801MOD,

- o WL1805MOD,

- o WL1807MOD,

- o WL1831MOD,

- o WL1835MOD,

- o WL1837MOD,

- o CC3350,

- o CC3351,

- o CC3301MOD, and

- o WDBM-LU00A-R.

- TI chips supporting **Wi-Fi Mesh** functionality (the "Wi-Fi Mesh Products") which include but are not limited to:

  - o C3200MOD,

  - o WL1801MOD,

  - o WL1805MOD,

  - o WL1807MOD,

  - o WL1831MOD,

  - o WL1835MOD,

- WL1837MOD,

- CC3135MOD,

- CC3235MODS,

- CC3235MODSF,

- CC3135,

- CC3235S,

- CC3235SF,

- CC3220S,

- CC3220SF,

- CC2564C,

- WL1831, and

- WL1801 (collectively, the "Accused Products").

18.    On information and belief, Defendant provides information and assistance to its customers to enable them to use the Accused Products in an infringing manner as described below.

19.    For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

20.    By letters dated February 11, 2021 (the "first Notice Letter") and March 5, 2021 (the "second Notice Letter"), addressed to Ms. Britnee Reamy, Kreimach, Senior Counsel, Patent Litigation at TI (collectively, the "Notice Letters"), Defendant was informed of CommWorks' patent portfolio, including that it infringes U.S. Patent Nos. 7,027,465; 7,177,285; 7,463,596; 7,911,979; and RE44,904, among the other Asserted Patents.

## COUNT I: <u>INFRINGEMENT OF U.S. PATENT NO. 7,177,285</u>

21.    CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

22.    For purposes of this Count, the term "Accused Products" shall mean TI chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the TI WPS Products.

23.    The USPTO duly issued U.S. Patent No. 7,177,285 (the "'285 patent") on February 13, 2007, after full and fair examination of Application No. 10/961,959 which was filed October 8, 2004.  The '285 patent is entitled "Time Based Wireless Access Provisioning."

24.    CommWorks owns all substantial rights, interest, and title in and to the '285 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

25.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '285 patent.

26.    The claims of the '285 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.  The written description of the '285 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '285 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

28.    The invention of the '285 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:37-41.  The invention of the '285 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system.  *Id.* at col. 3:42-49.  The invention of the '285 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58.  Moreover, the structure of the devices described in the '285 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired

network connection and a transceiver were not conventional (or even available) at the time of the invention.

29.    Defendant has directly infringed one or more claims of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

30.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '285 patent, as detailed in **Exhibit A** (Evidence of Use Regarding U.S. Patent No. 7,177,285).

31.    On information and belief, Defendant has infringed one or more claims of the '285 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the TI WPS Products.

32.    For example, as detailed in Exhibit A, Defendant has infringed at least claim 1 of the '285 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for provisioning between a wireless device and a network. The process for provisioning comprises the step of tracking an operating parameter of the wireless device within a service area, wherein the operating parameter of the wireless device comprises an onset of a signal transmission of the wireless device. *Id.* The process for provisioning further comprises the step of initiating provisioning of the wireless device if the tracked operating parameter occurs within a time interval. *Id.*

33.    From February 2021 until the '285 patent's expiry, Defendant had also indirectly infringed one or more claims of the '285 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the

doctrine of equivalents, one or more claims of the '285 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '285 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant performed these steps, which constitutes induced infringement with the knowledge of the '285 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '285 patent.

34.     From February 2021 until the '285 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '285 patent. Defendant had contributed to the direct infringement of one or more claims '285 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '285 patent, including, for example, claim 1 of the '285 patent. The special features constituted a material part of the invention of one or more of the claims of the '285 patent and were not staple articles of commerce suitable for substantial non-infringing use.

35.     Defendant had knowledge of the '285 patent when it received the first Notice Letter in February of 2021.

36.     Furthermore, on information and belief, Defendant has a policy or practice of not

reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

37.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

38.     Defendant's direct infringement of one or more claims of the '285 patent has been willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

39.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,463,596

40.     CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

41.     For purposes of this Count, the term "Accused Products" shall mean TI chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the TI WPS Products.

42.     The USPTO duly issued U.S. Patent No. 7,463,596 (the "'596 patent") on December 9, 2008, after full and fair examination of Application No. 11/673,513, which was filed on February 9, 2007.  The '596 patent is entitled "Time Based Wireless Access Provisioning."

43.     CommWorks owns all substantial rights, interest, and title in and to the '596 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

44.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations

required to collect pre-filing damages for the full period allowed by law for infringement of the '596 patent.

45.    The claims of the '596 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

46.    The written description of the '596 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

47.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '596 patent at col. 3:13-26.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:27-36.

48.    The invention of the '596 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:37-41.  The invention of the '596 patent

further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:42-49.  The invention of the '596 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:50-58. Moreover, the structure of the devices described in the '596 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

49.     Defendant has directly infringed one or more claims of the '596 patent by making, using, offering to sell, selling, and/or importing the Accused Products identified above.

50.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '596 patent, as detailed in **Exhibit B** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,463,596).

51.     On information and belief, Defendant has infringed one or more claims of the '596 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the TI WPS Products.

52.     For example, as detailed in Exhibit B, Defendant, using the Accused Products, has

infringed at least claim 1 of the '596 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a process for associating devices. The process for associating devices comprises the step of tracking an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device. *Id.* The process for associating devices further comprises the step of automatically associating the first device with at least one other device if the tracked operating parameter occurs within a time interval. *Id.*

53.     From February 2021 until the '596 patent's expiry, Defendant had also indirectly infringed one or more claims of the '596 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '596 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringed one or more claims of the '596 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '596 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '596 patent.

54.     From February 2021 until the '596 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement one or more claims of the '596 patent.  Defendant contributed to the direct infringement of one or more claims of the '596 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '596 patent, including, for example, claim 1.  The special features constituted a material part of the invention of one or more of the claims of the '596 patent and were not staple articles of commerce suitable for substantial non-infringing use.

55.     Defendant had knowledge of the '596 patent when it received the first Notice Letter in February of 2021.

56.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

57.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

58.     Defendant's direct infringement of one or more claims of the '596 patent has been and willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

59.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,911,979

60.     CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though

fully set forth in their entirety.

61.     For purposes of this Count, the term "Accused Products" shall mean TI chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the TI WPS Products.

62.     The USPTO duly issued U.S. Patent No. 7,911,979 (the "'979 patent") on March 22, 2011, after full and fair examination of Application No. 12/323,399 which was filed on November 25, 2008.  The '979 patent is entitled "Time Based Access Provisioning System And Process."  A Certificate of Correction was issued on July 19, 2011.

63.     CommWorks owns all substantial rights, interest, and title in and to the '979 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

64.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '979 patent.

65.     The claims of the '979 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

66.     The written description of the '979 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

67.    For example, at the time of the invention wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning.  '979 patent at col. 3:19-31.  Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process.  *Id.* at col. 3:32-41.

68.    The invention of the '979 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance."  *Id.* at col. 3:42-46.  The invention of the '979 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:47-53.  The invention of the '979 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication.  *Id.* at col. 3:54-62. Moreover, the structure of the devices described in the '979 patent was not conventional at the time of the invention.  Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired

network connection and a transceiver were not conventional (or even available) at the time of the invention.

69.    Defendant has directly infringed one or more claims of the '979 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

70.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '979 patent, as detailed in **Exhibit C** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,911,979).

71.    On information and belief, Defendant has infringed one or more claims of the '979 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible devices, such as, for example, the TI WPS Products.

72.    For example, as detailed in Exhibit C, Defendant, using the Accused Products, has infringed at least claim 1 of the '979 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a provisioning process performed by a provisioning system having provisioning logic.  The provisioning process performed comprises tracking, by the provisioning logic, an operating parameter of a first device, wherein the operating parameter of the first device comprises any of a power on of the first device, and an onset of a signal transmission of the first device.  *Id.*  The provisioning process performed in the Accused Products further comprises sending a signal to initiate provisioning of the first device with a network if the tracked operating parameter occurs within a designated time interval.  *Id.*

73.    From February 2021 until the '979 patent's expiry, Defendant had also indirectly infringed one or more claims of the '979 patent by inducing others to directly infringe said claims.

Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '979 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '979 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '979 patent and with the knowledge that the induced acts constitute infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '979 patent.

74.    From February 2021 until the '979 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '979 patent.  Defendant contributed to the direct infringement of one or more claims of the '979 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '979 patent, including, for example, claim 1.  The special features constituted a material part of the invention of one or more of the claims of the '979 patent and were not staple articles of commerce suitable for substantial non-infringing use.

75.    Defendant had knowledge of the '979 patent when it received the first Notice Letter

in February of 2021.

76.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

77.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

78.     Defendant's direct infringement of one or more claims of the '979 patent has been, willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

79.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. RE44,904

80.     CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

81.     For purposes of this Count, the term "Accused Products" shall mean any TI chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, the TI Wi-Fi Multimedia Products.

82.     The USPTO duly and lawfully reissued U.S. Patent No. RE44,904 (the "'904 patent") on May 20, 2014.  The '904 patent is entitled "Method For Contention Free Traffic Detection."

83.     CommWorks owns all substantial rights, interest, and title in and to the '904 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

84.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '904 patent.

85.     The claims of the '904 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

86.     The written description of the '904 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

87.     For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '904 patent at col. 2:9-10.  Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found.  *Id.* at col. 1:63-2:2.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols.  *Id.* at col. 2:5-8.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge.  *Id.* at col. 2:8-14.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points

(AP). *Id.* Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:20-25.

88. The invention of the '904 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:29-32, 3:2-4, 3:52-53. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by easily finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:62-65. The methods of the invention of the '904 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 3:5-8, 3:14-21. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:22-31.

89. Defendant has directly infringed one or more claims of the '904 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

90. Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '904 patent, as detailed in **Exhibit D** to this Complaint (Evidence of Use Regarding U.S. Patent No. RE44,904).

91.    On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '904 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia ("WMM") and/or 802.11-2007+ compatible chips, such as, for example, the TI Wi-Fi Multimedia Products.

92.    For example, as detailed in Exhibit D, Defendant, using the Accused Products, has infringed at least claim 1 of the '904 patent by performing a method comprising extracting a bit pattern from a predetermined position in a frame.  The method further comprises comparing said extracted bit pattern with a search pattern.  *Id.*  The method further comprises identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern.  *Id.* The method further comprises forwarding said received frame to a high priority queue in case said frame is detected to be a high priority frame during a special period for sending priority traffic.  *Id.* The method further comprises adjusting the duration of the special period for sending priority traffic according statistic information regarding sent priority frames.  *Id.*

93.    From February 2021 until the '904 patent's expiry, Defendant had also indirectly infringed one or more claims of the '904 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '904 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '904 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users

to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant performed these steps, which constitutes induced infringement with the knowledge of the '904 patent and with the knowledge that the induced acts constituted infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '904 patent.

94.     From February 2021 until the '904 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '904 patent.  Defendant had contributed to the direct infringement of one or more claims of the '904 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '904 patent, including, for example, claim 1.  The special features constituted a material part of the invention of one or more of the claims of the '904 patent and were not staple articles of commerce suitable for substantial non-infringing use.

95.     Defendant had knowledge of the '904 patent when it received the first Notice Letter in February of 2021.

96.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

97.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

98.     Defendant's direct infringement of one or more claims of the '904 patent has been, willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

99.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V: <u>INFRINGEMENT OF U.S. PATENT NO. 7,027,465</u>

100.     CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

101.     For purposes of this Count, the term "Accused Products" shall mean any TI chips and/or devices and/or software supporting Wi-Fi Multimedia and 802.11-2007+ functionality, including, for example, the TI Wi-Fi Multimedia Products.

102.     The USPTO duly issued U.S. Patent No. 7,027,465 (the "'465 patent") on April 11, 2006, after full and fair examination of Application No. 10/167,986 which was filed on June 11, 2002.  The '465 patent is entitled "Method For Contention Free Traffic Detection."

103.     CommWorks owns all substantial rights, interest, and title in and to the '465 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

104.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '465 patent.

105.     The claims of the '465 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

106.    The written description of the '465 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

107.    For example, at the time of the invention, "conventionally … transmission differentiation based on priority was not conducted at all." '465 patent at col. 2:9-10. Obtaining priority information for traffic transmitted through an Access Point (AP) required searching all fields in all frames for indications of the priority state of the actual data frame, resulting in all fields in all frames being checked and all headers being analyzed, starting from the outer most headers, until the right field in the header had been found. *Id.* at col. 1:53-59.  This measure was very complex, took a long time, and required a large amount of processing, especially for complex tunneling protocols. *Id.* at col. 1:62-65.  All the frame headers and protocols which can be included in the data frames transmitted via the network had to be known, hence, the amount of information needed for identifying the data was huge. *Id.* at col. 1:66-2:4.  Such a huge amount of information was typically too heavy to handle in small and low price equipment like WLAN access points (AP). *Id.*  Further, then existing systems according to the IEEE 802.11 standard did not separate traffic based on priority. *Id.* at col. 2:11-15.

108.    The invention of the '465 patent improved upon conventional network traffic routing systems by providing methods by which priority traffic can easily be distinguished from normal traffic without the need of complex processing making it possible to execute in a low cost and possibly low performance AP. *Id.* at col. 2:19-23, 2:60-62, 3:43.  The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by easily

finding higher priority traffic from the stream of MAC layer frames without necessarily requiring knowledge of the upper layer protocols. *Id.* at col. 2:53-56. The methods of the invention of the '465 patent further improved upon conventional network traffic routing systems by being protocol-independent and flexible such that their configuration may be done in an external configuration program; with the Access Point not needing to know anything about the processed traffic; further alleviating the need of complex structure of the device. *Id.* at col. 2:63-66, col. 3:5-11. A further advantage over conventional network traffic routing systems is that installation of new software or hardware in the network element would not be required when new protocols or modified protocols are introduced in the network. *Id.* at col. 3:12-21.

109.    Defendant has directly infringed one or more claims of the '465 patent by importing, selling, manufacturing, offering to sell, using, providing, supplying, or distributing the Accused Products identified above.

110.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '465 patent, as detailed in **Exhibit E** to this Complaint (Evidence of Use Regarding U.S. Patent No. 7,027,465).

111.    On information and belief, Defendant, using the Accused Products, has infringed one or more claims of the '465 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by performing methods for contention free traffic detection using Wi-Fi Multimedia (WMM) and/or 802.11-2007+ compatible chips and devices, such as, for example, the TI Wi-Fi Multimedia Products.

112.    For example, as detailed in Exhibit E, Defendant has infringed at least claim 1 of the '465 patent by performing a method for detecting priority of data frames in a network. The method for detecting priority of data frames comprises the step of extracting a bit pattern from a

predetermined position in a frame. *Id.* The method for detecting priority of data frames further comprises the step of comparing said extracted bit pattern with a search pattern. *Id.* The method for detecting priority of data frames further comprises the step of identifying a received frame as a priority frame in case said extracted bit pattern matches with said search pattern. *Id.* In the method for detecting priority of data frames, the predetermined position in said frame is defined by the offset of said bit pattern in said frame. *Id.*

113.    From February 2021 until the '465 patent's expiry, Defendant had also indirectly infringed one or more claims of the '465 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '465 patent by providing or requiring use of the Accused Products. Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '465 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant performed these steps, which constitutes induced infringement with the knowledge of the '465 patent and with the knowledge that the induced acts constituted infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '465 patent.

114.    From February 2021 until the '465 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '465 patent. Defendant

had contributed to the direct infringement of one or more claims of the '465 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '465 patent, including, for example, claim 1 of the '465 patent.  The special features constituted a material part of the invention of one or more of the claims of the '465 patent and were not staple articles of commerce suitable for substantial non-infringing use.

115.    Defendant had knowledge of the '465 patent when it received the first Notice Letter in February of 2021.

116.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

117.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

118.    Defendant's direct infringement of one or more claims of the '465 patent has been, willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

119.    CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 6,891,807

120.    CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

121.    For purposes of this Count, the term "Accused Products" shall mean TI chips, SoCs, and/or devices supporting Wi-Fi Protected Setup (WPS) functionality, including, for example, the TI WPS Products.

122.    The USPTO duly issued U.S. Patent No. 6,891,807 (the "'807 patent") on May 10, 2005, after full and fair examination of Application No. 10/341,847 which was filed on January 13, 2003.  The '807 patent is entitled "Time Based Wireless Access Provisioning."

123.    CommWorks owns all substantial rights, interest, and title in and to the '807 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

124.    CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '807 patent.

125.    The claims of the '807 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

126.    The written description of the '807 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

127.    For example, at the time of the invention, wireless access to data networks was not yet conventional.  Then existent systems for provisioning access to a network were impractical, such

as for wireless devices which lacked a user interface configured for communicating provisioning information, or for simple home-based intranets, such as a wireless picture frame device lacking a control interface to read or extract identification information, such as a MAC address, to facilitate wireless access provisioning. '807 patent at col. 3:5-18. Further, wireless devices that did have a dedicated user interface were incapable of, or cumbersome in, communicating device identification and exchanging provisioning information, still requiring a user to be technically proficient to properly initiate and complete a provisioning process. *Id.* at col. 3:19-28.

128.    The invention of the '807 patent improved upon existent network provisioning systems by enabling provisioning without requiring a user interface for the initiation of a provisioning process—"a major technological advance." *Id.* at col. 3:29-33. The invention of the '807 patent further improved upon existent provisioning systems by providing a wireless access provisioning structure and process with minimal device requirements and/or user proficiency, whereby a wireless device is readily provisioned by the provisioning system, and whereby other unauthorized devices within an access region are prevented from being provisioned by the provisioning system. *Id.* at col. 3:34-41. The invention of the '807 patent further improved upon existent provisioning systems by providing a time-based wireless access provisioning system integrated with easily monitored parameters of a wireless device, such as the time monitoring of power on and/or start of signal transmission, for provisioning secure encrypted communication. *Id.* at col. 3:42-50. Moreover, the structure of the devices described in the '807 patent was not conventional at the time of the invention. Specifically, a device such as an access point, comprising a provisioning activation button, time-based provisioning logic, access control list, wired network logic, a wired network connection and a transceiver were not conventional (or even available) at the time of the invention.

129.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 17 of the '807 patent, as detailed in **Exhibit F** to this Complaint (Evidence of Use Regarding U.S. Patent No. 6,891,807).

130.    On information and belief, Defendant has infringed one or more claims of the '807 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States Wi-Fi Protected Setup ("WPS") compatible consumer electronics chips, such as, for example, the TI WPS Products.

131.    For example, as detailed in <u>Exhibit F</u>, Defendant has infringed at least claim 17 of the '807 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which include a time based network access provisioning system between a wireless device and a network.  The time based network access provisioning system comprises a network access point connected to the network, the network access point comprising logic for tracking operation of the wireless device.  *Id.*  The time based network access provisioning system further comprises logic for provisioning the wireless device if the operation of the wireless device occurs within an activatable time interval.  *Id.*

132.    From February 2021 until the '807 patent's expiry, Defendant had also indirectly infringed one or more claims of the '807 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '807 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '807 patent, including, for example, claim 17.  Such steps by

Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '807 patent and with the knowledge that the induced acts constitute infringement.  Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '807 patent.

133.    From February 2021 until the '807 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '807 patent.  Defendant had contributed to the direct infringement of the '807 patent by its personnel, contractors, distributors, and customers.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '807 patent, including, for example, claim 17.  The special features constituted a material part of the invention of one or more of the claims of the '807 patent and were not staple articles of commerce suitable for substantial non-infringing use.

134.    Defendant had knowledge of the '807 patent when it received the first Notice Letter in February of 2021.

135.    Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

136.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

137.     Defendant's direct infringement of one or more claims of the '807 patent has been willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

138.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII: <u>INFRINGEMENT OF U.S. PATENT NO. 9,554,304</u>

139.     CommWorks repeats and re-alleges the allegations in paragraphs 1-19 above as though fully set forth in their entirety.

140.     For purposes of this Count, the term "Accused Products" shall mean TI chips, SoCs, and/or devices supporting Wi-Fi Mesh functionality, including, for example, the Wi-Fi Mesh Products.

141.     The USPTO duly issued U.S. Patent No. 9,554,304 (the "'304 patent") on January 24, 2017, after full and fair examination of Application No. 14/090,760 which was filed on November 26, 2013.  The '304 patent is entitled "Scalable Media Access Control for Multi-Hop High Bandwidth Communications."

142.     CommWorks owns all substantial rights, interest, and title in and to the '304 patent, including the sole and exclusive right to prosecute this action and enforce said patent against infringers and to collect damages for all relevant times.

143.     CommWorks or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '304 patent.

144.     The claims of the '304 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting network provisioning systems.

145.    The written description of the '304 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

146.    For example, at the time of the invention wireless communications and scalable medium access control ("MAC") modules for use in multi-hop wireless network communications over high bandwidth network communication channels was impractical.  Existing technologies could only be carried out locally and failed to account for end-to-end resource allocation. '304 patent, at 1:62-67; 3:7-9.  This led to a significant increase in communication errors because the routing protocols unknowingly selected routing paths without enough resources.  *Id.* at 3:9-15.

147.    The invention of the '304 patent improved upon MACs by providing wireless network meshes that avoided conflict resource reservation to prevent degradation of network performance as the number of hops or nodes increased in the network.  *Id.* at 3:19-22.  This resource allocation is also performed together with routing to achieve layer-2 routing within the MAC protocol to ensure optimal performance in both routing and the MAC layer.  *Id.* at 3:36-40.  Further, these meshes allowed the MAC to be compliant with both WiMedia MAC and IEEE 802.15.3 MAC, for seamless integration in the industry.  *Id.* at 3:30-33.

148.    Defendant has directly infringed either literally or under the doctrine of equivalents, at least claim 1 of the '304 patent, as detailed in **Exhibit G** to this Complaint (Evidence of Use Regarding U.S. Patent No. 9,554,304).

149.    On information and belief, Defendant has infringed one or more claims of the '304 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering for sale, selling, and/or importing into the United States such as, for example, the Wi-Fi Mesh Products.

150.    For example, as detailed in Exhibit G, Defendant, using the Accused Products, has infringed at least claim 1 of the '304 patent by making, using, offering to sell, selling, and/or importing the Accused Products, which perform a method comprising receiving a beacon signal from a wireless communication network, wherein the beacon signal includes information about a sender node and network synchronization information.  The receiving a beacon signal process comprises adding the sender node to a neighbor list.  *Id.*  The receiving a beacon signal process further comprises determining a signal quality for the beacon signal from the sender node.  *Id.*  The receiving a beacon signal process further comprises establishing a wireless communication link with the sender node if the determined signal quality meets a predetermined threshold quality level. *Id.*

151.    From February 2021 until the '304 patent's expiry, Defendant had also indirectly infringed one or more claims of the '304 patent by inducing others to directly infringe said claims. Defendant had induced distributors and end-users, including, but not limited to, Defendant's employees, partners, contractors, or customers, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '304 patent by providing or requiring use of the Accused Products.  Defendant had taken active steps, directly or through contractual relationships

with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '304 patent, including, for example, claim 1. Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant had performed these steps, which constitutes induced infringement with the knowledge of the '304 patent and with the knowledge that the induced acts constitute infringement. Defendant had been aware that the normal and customary use of the Accused Products by others would infringe one or more claims of the '304 patent.

152.    From February 2021 until the '304 patent's expiry, Defendant had also indirectly infringed by contributing to the infringement of one or more claims of the '304 patent. Defendant contributed to the direct infringement of one or more claims of the '304 patent by its personnel, contractors, distributors, and customers. The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '304 patent, including, for example, claim 1. The special features constituted a material part of the invention of one or more of the claims of the '304 patent and were not staple articles of commerce suitable for substantial non-infringing use.

153.    Defendant had knowledge of the '304 patent when it received the first Notice Letter in February 2021.

154.    Furthermore, on information and belief based on public information, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of CommWorks' patent rights.

155.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

156.     Defendant's direct infringement of one or more claims of the '304 patent has been willful, intentional, deliberate, or in conscious disregard of CommWorks' rights under the patent.

157.     CommWorks has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to CommWorks in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284

## JURY DEMAND

158.     CommWorks hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

159.     CommWorks requests that the Court find in its favor and against Defendant, and that the Court grant CommWorks the following relief:

a.   Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by the Defendant or others acting in concert therewith;

b.   Judgment that Defendant account for and pay to CommWorks all damages to and costs incurred by CommWorks because of Defendant's infringing activities and other conduct complained of herein;

c.   Judgment that Defendant's infringements of the Asserted Patents during their lives be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.   Pre-judgment interest on the damages caused by Defendant's infringing activities and

other conduct complained of herein;

e. That this Court declare this an exceptional case and award CommWorks its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

f. All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>April 25, 2025</u>                Respectfully submitted,

                                By:<u>/s/ James F. McDonough, III</u>

                                James F. McDonough, III (GA 117088)*
                                **ROZIER HARDT MCDONOUGH PLLC**
                                659 Auburn Avenue NE, Unit 254
                                Atlanta, Georgia 30312
                                Telephone: (404) 564-1866
                                Email: jim@rhmtrial.com

                                Jonathan L. Hardt (TX 24039906)*
                                **ROZIER HARDT MCDONOUGH PLLC**
                                712 W. 14th Street, Suite A
                                Austin, Texas 78701
                                Telephone: (210) 289-7541
                                Email: hardt@rhmtrial.com

                                C. Matthew Rozier (CO 46854)*
                                Kenneth A. Matuszewski (IL 6324308)*
                                **ROZIER HARDT MCDONOUGH PLLC**
                                1500 K Street, 2nd Floor
                                Washington, District of Columbia 20005
                                Telephone: (404) 779-5305; (202) 316-1591
                                Telephone: (708) 870-5803
                                Email: matt@rhmtrial.com
                                Email: kenneth@rhmtrial.com

            *Attorneys for Plaintiff COMMWORKS SOLUTIONS, LLC*

                                        * Admitted to the Eastern District of Texas

<u>**List of Exhibits**</u>
    A.  Evidence of Use Regarding U.S. Patent No. 7,177,285
    B.  Evidence of Use Regarding U.S. Patent No. 7,463,596
    C.  Evidence of Use Regarding U.S. Patent No. 7,911,979
    D.  Evidence of Use Regarding U.S. Patent No. RE44,904
    E.  Evidence of Use Regarding U.S. Patent No. 7,027,465
    F.  Evidence of Use Regarding U.S. Patent No. 6,891,807
    G.  Evidence of Use Regarding U.S. Patent No. 9,554,304

<u>**Attachments**</u>
    •  Civil Cover Sheet

    •  Proposed Summons